**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**


JOHN FINN,

        Plaintiff,

    vs.                             No. Civ. 99-982 SC/WWD

STATE OF NEW MEXICO,
STATE PERSONNEL OFFICE,
NEW MEXICO STATE HIGHWAY
AND TRANSPORTATION
DEPARTMENT, and PETE K. RAHN,
Secretary,

        Defendants.


**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment, filed January 31, 2000 [Doc. No. 9].  The Court, having read the motion, memoranda, and exhibits submitted by the parties, and being apprised of the applicable law, concludes that the motion is partially well-taken.

**I.    BACKGROUND**

Plaintiff was a permanent, classified (i.e., tenured) employee of Defendant New Mexico State Highway and Transportation Department (the Department).  He began working for the Department in 1974.  He was terminated effective September 8, 1995.  At the time of his termination, Plaintiff had worked for the Department for over 20 years and was within a few years of retirement.  Furthermore, up until 1995 and the actions at issue,

Plaintiff had received uniformly favorable performance evaluations and served in an increasingly responsible series of positions.

In January 1995, there was a change in administrations and, therefore, changes in the Department's upper management. Defendant Rahn was appointed Secretary of the Department. Benny Roybal (Roybal), who had been Director of Field Operations, became the Deputy Secretary. Defendant Rahn and the Department decided to implement a workforce reorganization. This intent to reorganize became generally known in the early months of 1995. As of February 1995, it was known that Plaintiff's position would be negatively impacted. At that time, Plaintiff was the Administrator of the Engineering Operations Division. However, as a result of the reorganization plan, Plaintiff was to be demoted and transferred to another division. Plaintiff alleges the reorganization plan was unilaterally decided upon and was improper and illegal because the required approval by Defendant State Personnel Office (the State Personnel Office) was not obtained before its implementation.

During the early months of 1995, Plaintiff was physically, emotionally, and mentally distressed due to chronic and severe joint pain and the anticipation of complete hip replacement surgery. Plaintiff's emotional and mental distress was amplified by the threatened and allegedly illegal reorganization plan. Plaintiff's actions in 1995 relating to and surrounding the reorganization attempt were colored significantly by his physical, emotional, and mental distress, including severe depression.

On April 14, 1995, shortly before Plaintiff took medical leave for surgery, Roybal

2

attempted to meet with Plaintiff to discuss the planned reorganization.  It appears Roybal did inform Plaintiff at this time that he would be demoted and transferred as a result of the reorganization.  However, because Roybal had previously verbally reprimanded Plaintiff about the need to go through the chain of command and Roybal was not Plaintiff's immediate supervisor (and thus had failed to follow the chain of command by going through Plaintiff's supervisor), Plaintiff refused to discuss the reorganization further with Roybal.  Plaintiff was further angered by Roybal's insensitivity – the meeting was unscheduled and on Good Friday; although battling constant and severe pain, Plaintiff had come to work to finish an important project before his surgery; and Roybal had not asked if Plaintiff could spare the time or if there was a more convenient time to meet.

On April 18, 1995, Plaintiff sent an one-page Intra-Departmental Correspondence to Roybal regarding the April 14 meeting.  The correspondence was copied to two people – Defendant Rahn and Plaintiff's immediate supervisor, Fred Cooney, Engineering Operations Division Director.  In this memorandum, Plaintiff informed that he was upset about Roybal's April 14 visit to him, as described above.  Plaintiff also stated that the reorganization appeared to him to be an abuse of power and a "front to help your friends and those that play up to you, and to 'crucify' those you may not like."  Defs.' Mem. in Supp. of Mot. for Sum. J. (Defs.' Supp. Mem.), Ex. A-1.  Plaintiff requested an apology from Roybal and that the decision to demote and transfer him be rethought.  Defendants nor Roybal took any action or otherwise responded to Plaintiff's complaints or clear

3

distress.

Plaintiff had surgery in April 1995. Upon his return to work in June 1995, Plaintiff learned specifically that, as a result of the Department and Defendant Rahn's reorganization plan, he would be demoted from an Administrator V to an Administrator IV, with a reduction in salary range from 28 to 24.[1] Plaintiff also was to be transferred from the Engineering Operations Division to the Construction Bureau. Two other employees were to be downgraded as a result of the reorganization plan, while three other employees were to be upgraded.

On July 24, 1995, Plaintiff sent a memorandum to the Deputy General Counsel of the Department's Office of General Counsel, Richard Ferrary. This correspondence was not attached as an exhibit by Defendants. While the memorandum is mentioned in another Defendants' exhibit (the February 4, 1997 Amended Recommend Decision of the Administrative Law Judge for the State Personnel Board), only portions of it are quoted. In the portions quoted, Plaintiff informed that he would protest any cut in pay or disqualification for annual merit increases; that he believed the Department was conspiring to discriminate against him because of his handicap or disability; and that there was a continuing pattern of employee mistreatment and discrimination, as illustrated by the Bertain Report,[2] Plaintiff's situation, and other employee cases. Plaintiff also

---

[1] According to Defendants, Plaintiff's demotion would result in $0.17 per hour reduction in pay. Although a concern of Plaintiff, as revealed in his Inter-Departmental Correspondences, there is no mention by Defendants of the effect of the demotion on Plaintiff's eligibility for annual merit increases.

[2] The Bertain Report is not attached nor described by either party.

4

requested that Ferrary be present, as a stabilizing factor, at any meeting between Plaintiff and Roybal, Defendant Rahn, or any of their agents. It appears that Plaintiff and Ferrary exchanged subsequent communications about Ferrary's role in the process, the outcome of which is not provided in the record. However, Ferrary represented the Department against Plaintiff at the hearing before the Administrative Law Judge (ALJ) for the State Personnel Board.

On August 17, 1995, Plaintiff sent an Intra-Departmental Correspondence to Defendant Rahn and Roybal. The correspondence was copied to the Governor's Office, New Mexico's U.S. Senators and Congressmen, selected state legislators, the Federal Highway Administration, the Department's Commissioners, Fred Cooney, other Department employees, the Department's Personnel Office, the State Personnel Office, the Department's General Counsel Office, the State Attorney General's Office, the U.S. Attorney, the EEOC (Albuquerque office), the State Department of Labor and Human Rights Division, and Plaintiff's personal attorney. In this correspondence, Plaintiff informed that he had received no response to his April 18 memorandum, that no attempt had been made to resolve the situation in the four months since that correspondence, and that he could only conclude that Defendant Rahn and Roybal had no interest in resolving the situation. Plaintiff further alleged in the memorandum that Roybal had incorporated into the reorganization plan his personal agenda of promoting sycophants and harming people he disliked; that he was "[s]wollen with power" and "tyrannical," "running roughshod over the rights of others"; and that rather than ridding the department of

5

discrimination, favoritism, unfair and illegal employment and personnel practices, and

other abuses cited in the Bertain Report, he was implementing a reorganization plan that

was "more of the same."  Defs.' Supp. Mem., Ex.

A-2.  In his discussion of the Department's need to treat its employees fairly, Plaintiff

mentioned litigation involving another employee and the Department.  Plaintiff also

suggested, in a reasonable manner, ways in which the reorganization could be better and

more fairly developed and implemented with regard to all employees of the Department.

Additionally, Plaintiff alleged that Roybal was ill-fitted for the position of Deputy

Secretary of Highway Operations because he was not an engineer and the position

required engineering oversight.  Plaintiff voiced further concerns about Roybal's

accounting capabilities, reciting specific examples.   In the remainder of his

memorandum, which shows obvious signs of Plaintiff's emotional and mental distress

and judgment difficulties, Plaintiff complains about his demotion under the

reorganization plan, the illegality of the plan, and Roybal, Defendant Rahn, and the

Department's discrimination against him because he is a disabled and/or handicapped

person.

On August 21, 1995, Plaintiff sent an Intra-Departmental Correspondence to the

Chief Attorney of the Department's Office of General Counsel, Arthur J. Waskey.  This

correspondence was copied to many, if not all, of the same people copied in Plaintiff's

August 17 memorandum.  Defendant Rahn and Roybal also were copied.  In this

correspondence, Plaintiff essentially informed Waskey of his plan to file an EEOC claim

6

against Roybal for discrimination against the disabled, and a separate but related charge against Defendant Rahn.  Plaintiff also requested information on whether an attorney from the Department's Office of General Counsel would represent him in the EEOC proceedings or whether he would have to hire his own attorney.  Again, Plaintiff's emotional and mental distress is clear.

On August 24, 1995, Plaintiff sent Roybal an Intra-Departmental Correspondence dated August 23, 1995.  In addition to the people or organizations Plaintiff copied in his earlier letters, Plaintiff also copied Defendant Rahn, three additional Department employees, the State Auditor's Office, the State Accountancy Board, the New Mexico Engineer's Licensing Board, the Federal Highway Administration's Civil Rights Office, the U.S. Department of Justice, the EEOC (Washington, D.C. office), the U.S. Department of Labor (Albuquerque office), the U.S. Department of Transportation, the State Department of Finance and Administration, and the State Legislative Finance Council.  In this memorandum, Plaintiff informed that it was inappropriate and discriminatory for him to be required to perform accounting and administrative work assignments for the Construction Bureau before the State Personnel Office approved, and the Department's Personnel Office implemented, the reorganization plan and in addition to his current workload for the Engineering Operations Division.  Plaintiff also stated that other employees, anticipating the reorganization, were performing lesser duties without any change in their classification, while he, a disabled person, was having to perform more duties and was being demoted.  Plaintiff noted that the Department and Roybal,

7

through ineptitude and incompetence, had missed the July 1, 1995 (start of the new fiscal year) deadline for reorganization approval by the State Personnel Office.  Plaintiff further stated that the Department and Roybal's implementation of the reorganization in the Department's accounting system before the reorganization had been approved by the State Personnel Office had resulted in chaos, mass confusion, and internal squabbling over whether the reorganization was or was not in effect.  Confusion included which system was to be followed (the updated accounting system or the non-updated personnel system), which organization codes were to be used, which employees were supposed to be doing what, and who was in charge of what activities and which employees.  Adding to the chaos, was the failure of the Department, Roybal, or Defendant Rahn to provide written clarification of supervision and task division during the interim between July 1, 1995 and the State Personnel Office's approval of the reorganization.  Plaintiff also stated that Roybal's failure to respond to Plaintiff's concerns was bad management practice, and, if Roybal did not respond to this correspondence, Roybal would need to find someone else to perform the Construction Bureau's accounting and administrative duties until the official effective date of the reorganization plan.

Plaintiff reiterated and expanded on his concern that Roybal was making decisions about matters which he was unknowledgeable – e.g., accounting decisions, engineering decisions, personnel decisions, information services and date processing decisions, and financial decisions.  Plaintiff also informed that Roybal played favorites when making budgetary or financial decisions and that he dissolved engineering divisions only to

8

recreate them with personnel answering directly to him, extracting pledges of loyalty to

him as a condition of position selection and ignoring the recommendations of the top

engineering staff involved.  Plaintiff further complained that Roybal had ignored the

requests of Plaintiff and others for specific type of storage buildings, the result of which

was a loss of hundreds of thousands of dollars in traffic paint.  Plaintiff also complained

that the Department had just completed a reorganization, that the Department had better

things to do then constantly reorganizing, and that an engineer, and, not Roybal, would be

the best person to decide and plan any reorganization needed to improve the Highway

Operations Division.  Plaintiff again stated that Roybal and Defendant Rahn were

conspiring to demote him and that he was being discriminated against because he was

disabled.

On August 24, 1995, Defendant Rahn provided Plaintiff with a Notice of

Contemplated Disciplinary Action, proposing to terminate Plaintiff's employment with

the Department because of his August 17, 21, and 24, 1995 interoffice memoranda.  In

this Notice, Defendant Rahn informed Plaintiff that although the substance of Plaintiff's

memoranda "deal with matters about which you have the prerogative to pursue," the tone

and manner used by Plaintiff were irresponsible and unprofessional.  Defs.' Supp. Mem.,

Ex. A-5.  Defendant Rahn further informed Plaintiff that it appeared from his August 24

memorandum that Plaintiff was refusing to perform duties assigned him, and that

insubordinate behavior would not be tolerated.  Defendant Rahn finally informed Plaintiff

that his use of Department resources and work time to pursue his claims against the state

was contrary to the Governor's conduct code.  Defendant Rahn then briefly explained the

Department's grievance and complaint processes.  Defendant Rahn also briefly noted that

Plaintiff's emotional state might be clouding his judgment abilities and urged Plaintiff to

seek professional help.  Defendant Rahn concluded by informing Plaintiff of the methods

and procedures for responding to the allegations in the Notice.  It appears that this Notice

was not provided to Plaintiff until four days later, on August 28.  The "receipt

acknowledgment" signature and date lines on the Notice are blank.  A handwritten note

on the Notice indicates that Plaintiff refused to accept the Notice when it was hand-

delivered to him on August 28, that the Notice was to be sent to him by certified mail,

and that he had been placed on administrative leave from August 28 to September 1,

1995.   It appears that Plaintiff received the Notice in the mail on September 1, 1995.  It

is unclear whether he knew before September 1 of the contents of the Notice or that he

had been placed on administrative leave.

On August 28, 1995, Plaintiff sent a final Intra-Departmental Correspondence to

Roybal.  The correspondence was copied to Defendant Rahn, the Governor's Office, New

Mexico's U.S. Senators and Congressmen, selected state legislators, the Department's

Commissioners, the State Department of Labor and Human Rights Division, the State

Personnel Office, the State Attorney General's Office, the U.S. Attorney, the EEOC

(Albuquerque and Washington, D.C. offices), the Federal Highway Administration (Santa

Fe office), the Federal Highway Administration's Civil Rights Office (Washington, D.C.

office), the U.S. Department of Justice (Washington, D.C. office), the U.S. Department of

Labor (Albuquerque office), the U.S. Department of Transportation (Washington, D.C.

office), Plaintiff's personal attorney, the Department's District Engineers, Fred Cooney,

Arthur Waskey, Richard Ferrary, and  other Department employees.  In this

correspondence Plaintiff alleged that Roybal had been having an affair with another

(married) Department employee and may have contributed to that employee's divorce.

Plaintiff further stated the Roybal had put his interests above that of the Department; that

he abused his power; that his selection of this employee's (ex-) husband for a position,

although qualified for, had the appearance of impropriety; and that it was expected that

the employee herself was to be selected as a Bureau Chief, replacing the prior Chief who

had been removed without just cause or due process (and resulting in litigation).  Plaintiff

ended with his belief that Roybal should resign his position with the Department.

On September 7, 1995, Defendant Rahn sent Plaintiff by certified mail a Notice of

Final Disciplinary Action, terminating for just cause Plaintiff's employment with the

Department as of September 8, 1995.  The reasons given for the termination were: (1) the

irresponsible and unprofessional tone and manner of Plaintiff's August 17, 21, and 24,

1995 interoffice memoranda (specifically, the wide-distribution of these documents; the

use of electronic mail and other Department resources to compose and send the

documents; the documents' inflammatory, defamatory, and threatening statements and

false, irresponsible, and outrageous accusations; and the documents' degree of malice,

hostility, and anger); (2) Plaintiff's threatened insubordinate behavior in the August 24

correspondence; (3) Plaintiff's failure to follow the established grievance and complaint

processes, which were "designed to provide confidentiality to all concerned"; and (4)

Plaintiff's discussion of "possible disciplinary measures taken against other [Department]

employees." Defs.' Supp. Mem., Ex. A-7.  Defendant Rahn also informed that Plaintiff's

memoranda had "created disruption to the ordinary operations of the Department" and an

atmosphere which detracted from Defendant Rahn's "goal of maintaining a positive work

environment." Id.  Further, Plaintiff's manner in airing the matters at issue "had seriously

compromised any constructive discussion with [Plaintiff] to address the underlying

concerns expressed" by Plaintiff. Id.  Plaintiff signed for the Notice on September 14,

1995.

 Plaintiff was given thirty days to appeal the disciplinary action.  Plaintiff appealed.

After a hearing and an initial opinion, in February 1997 the ALJ issued an Amended

Recommended Decision affirming Plaintiff's dismissal.  The State Personnel Board

adopted the Amended Recommended decision on February 21, 1997.  Plaintiff had thirty

days to appeal the decision to state district court.  Although Plaintiff adamantly desired to

appeal the decision, his attorney, his psychologist, and his wife believed an appeal or

continued litigation at that time would be harmful to his mental health.  As a result,

Plaintiff did not pursue a further appeal.

 Plaintiff filed a Complaint for damages and equitable relief in the First Judicial

District Court of the State of New Mexico on August 28, 1998, and an Amended

Complaint on August 17, 1999.  Service was effected on August 18 and 19, 1999.

Defendants removed the action to this Court on September 1, 1999.  All proceedings in

this case, except for those connected with the motion at bar, have been stayed.

The Department, the State Personnel Office, Defendant State of New Mexico and Defendant Rahn, in his official capacity, are sued for the purpose of obtaining equitable relief. Plaintiff seeks general, special, and punitive damages and attorney's fees and costs against Defendant Rahn, in his individual capacity.

## II.   LEGAL STANDARDS

### A.  Summary Judgment

A motion for summary judgment should be granted only when there is no genuine issue of material fact and, as a matter of law, the moving party is entitled to judgment. See Fed. R. Civ. P. 56(c). A court's job in ruling on a motion for summary judgment is not to weigh the evidence, make credibility determinations, or draw inferences from the facts, but, rather, to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 255 (1986). The inquiry a court must make is "whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. If a court finds that there are genuine and material factual issues, these issues should be resolved by the fact finder, and summary judgment is precluded. See id. at 248.

When ruling on a motion for summary judgment, a court must construe the facts in the light most favorable to the nonmovant. See Magnum Foods, Inc. v. Continental Casualty Co., 36 F.3d 1491, 1497 (10th Cir. 1994). All doubts must be resolved in favor

13

of the existence of triable issues.  See World of Sleep, Inc. v. La-Z-Boy Chair Co., 756

F.2d 1467, 1474 (10th Cir. 1985).  Factual inferences tending to show triable issues must

be considered in the light most favorable to the existence of those issues.  See Seamons v.

Snow, 206 F.3d 1021, 1026 (10th Cir. 2000); see also Anderson, 477 U.S. at 255

(drawing of legitimate inferences from facts is jury function, not judge function on

motion for summary judgment).  The moving party bears the initial burden of showing the

absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317,

325 (1986).  Only then does the burden shift to the nonmovant to come forward with

evidence showing that there is a genuine issue of material fact.  See Bacchus Indus., Inc.

v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

**B.  Qualified Immunity**

Special rules are applied when a defendant raises the defense of qualified

immunity.  Once the defendant pleads qualified immunity, the burden shifts to the

plaintiff to demonstrate (1) the defendant's conduct violated the law, and (2) the relevant

law was clearly established when the alleged violation occurred.  See Albright v.

Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995); see also Anderson v. Creighton, 483

U.S. 635, 640 (1987).  Unless both prongs of the test are satisfied, qualified immunity

must be granted.  See Clanton v. Cooper, 129 F.3d 1147, 1153-54 (10th Cir. 1997).  "In

showing that the law was clearly, established, the plaintiff does not have to show that the

specific action at issue has been held unlawful, but the alleged lawfulness of the

defendant's conduct must be apparent in light of preexisting law."  Armijo v. Wagon

14

Mound Pub. Sch., 159 F.3d 1253, 1260 (10th Cir. 1998).  "The contours of the right must

be sufficiently clear that a reasonable official would understand that what he is doing

violates that right."  Anderson, 483 U.S. at 640.  To show a right is clearly established,

there must be Supreme Court or Tenth Circuit law on point, or the weight of authority

from other courts must support the plaintiff's proposition.  See Armijo, 159 F.3d at 1260.

If the plaintiff meets his burden of coming forward with facts or allegations which would

demonstrate that the defendant's alleged violation should have been apparent in light of

preexisting law, then the defendant assumes the normal summary judgment burden of

establishing that no material facts remain in dispute that would defeat his claim of

qualified immunity.  See Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th

Cir. 1992); Jantz v. Muci, 976 F.2d 623, 627 (10th Cir. 1992); see also Brown v. City of

Belen, No. 97-2139, 141 F.3d 1184, 1998 WL 115856 at *3 (10th Cir. Mar. 16, 1998)

(unpublished disposition).

## III.    DISCUSSION

### A.  Statute of Limitations

Defendants contend that Plaintiff's claims against the Department and Defendant

Rahn, in his individual and official capacities, are barred by the statute of limitations – §

1983 claims must be filed within three years of the date of accrual; the date of claim

accrual as to these two Defendants was the date of Plaintiff's employment termination,

September 7, 1995; and Plaintiff filed his First Amended Complaint on August 17, 1999,

almost a year late.  Defendants further contend in a footnote in their supporting

15

memorandum that if Plaintiff filed a timely Complaint before September 8, 1998, they were unaware of such a Complaint; they were not served with the Amended Complaint until August 19, 1999; and that such late service would be improper under Federal Rule of Civil Procedure 4.  Defendants cite no legal authority in their supporting memorandum or reply to support their contention that the Federal Rules of Civil Procedure apply or that I should dismiss Plaintiff's Complaint against Defendant Rahn and the Department because it was not timely served.

Plaintiff assumes for sake of argument that the operative claim accrual date is September 7, 1995, and not February 21, 1997, the date when the State Personnel Office ratified and made final the termination of Plaintiff by Defendant Rahn and the Department.  Plaintiff informs that the original Complaint was filed in the state court on August 28, 1998, and was thus filed within the three-year statute of limitations period.  Plaintiff acknowledges that service was effected almost one year after the filing of the original Complaint, on August 18 and 19, 1999, and states that the issue before the Court is not the timeliness of filing, but the timeliness of service.

As to the issue of sufficiency of service, Plaintiff contends that the New Mexico Rule of Civil Procedure 4 applies, and not the federal rule, as Defendants argue.  Plaintiff further contends that (1) under New Mexico Rule of Civil Procedure 4 and New Mexico caselaw, the timing of service on Defendants was not improper because there was good cause for the delay in service and Defendants have suffered no prejudice and (2) there is no New Mexico caselaw mandating dismissal of a case for failure of timely service;

16

rather, the determination is discretionary.  Plaintiff finally notes that even if the Federal

Rules of Civil Procedure do apply, his service was timely because the federal standard is

more lenient than the state standard.  Plaintiff contends that, under Tenth Circuit law,

delayed service may not require dismissal of a suit if the applicable statute of limitations

would bar the refiled action.

The applicable statute of limitations for a civil rights action in New Mexico is

three years.  See Wilson v. Garcia, 471 U.S. 261, 269, 280 (1985); Robinson v. Maruffi,

895 F.2d 649, 654 (10th Cir. 1990); N.M. Stat. Ann. § 37-1-8 (1990 Repl. Pamp.).[3]

While Plaintiff does provide a different possible claim accrual date, for purposes of this

motion, the parties do not dispute that Plaintiff's claim accrued as to Defendant Rahn and

the Department on the date he was terminated by them, September 7, 1995.   Plaintiff's

original complaint was filed on August 28, 1998 and, thus, was filed within the statute of

limitations.

If service is actuated before removal of an action to federal court, as occurred in

the action at bar, then state procedural rules, and not federal rules, govern the timeliness

of such service.  See Lee v. City of Beaumont, 12 F.3d 933, 936-37 (9th Cir. 1993) ("The

issue of the sufficiency of service of process prior to removal is strictly a state law issue .

. . .");  see also Johnson v. N.T.I., 898 F.Supp. 762, 765 (D.Colo. 1995).  Consequently,

---

[3] The issue of whether Plaintiff was an "incapacitated person" or under a legal disability and, thus, eligible for a tolling of the statute of limitation until one year after the termination of such incapacitation or disability was not raised by the parties.  N.M. Stat. Ann. § 37-1-10 (1990 Repl. Pamp.).

the New Mexico Rules of Civil Procedure, as interpreted by New Mexico caselaw,

dictate whether Defendants Rahn and the Department were served in an untimely manner,

requiring the grant of summary judgment as to them.

Defendant Rahn and the Department timely asserted the defense of improper

service.[4]  See Graubard v. Balcor Co., 2000-NMCA-032, ¶ 5, 999 P.2d 434, 436 (Ct.

App. 2000) (citing Rupp v. Hurley, 1999-NMCA-057, ¶ 20, 127 N.M. 222, 979 P.2d 733

(Ct. App. 1999) (N.M. Civil Procedure Rule 12(B)(5) defense of insufficiency of service

of process waived if not raised at the first opportunity, i.e., with answer or as part of the

first motion to dismiss)).  In determining whether a complaint should be dismissed for

untimely service, a trial court applies a two-part analysis: (1) the court must determine if

the plaintiff failed to exercise due diligence in serving process on the defendants based on

a standard of objective reasonableness, and (2), if so, then the trial court must exercise its

discretion to determine whether the delay warrants dismissal of the complaint.  See

Graubard, 2000-NMCA-032, ¶¶ 12,13, 999 P.2d at 437; see also Prieto v. Home Educ.

Livelihood Program, 94 N.M. 738, 742, 616 P.2d 1123, 1127 (Ct. App. 1980) (A "trial

court, in the exercise of its inherent power and in its discretion, . . . may dismiss a case

for failure to prosecute when it is satisfied that [the] plaintiff has not applied due

diligence in the prosecution of his suit.").  Lack of due diligence is equivalent to failure to

---

[4] In their Answer, filed on September 17, 1999, in this Court, Defendants contended that Plaintiff failed to properly or timely effect service of the original Complaint.  This allegation makes disingenuous their later contention in their supporting memorandum that they were unaware of an original complaint.

prosecute and may be demonstrated by laches, wilful delay, see Prieto, 94 N.M. at 742,

616 P.2d at 1127, or, under some facts, by "a significant unintentionally-caused delay,"

Graubard, 2000-NMCA-032, ¶ 9, 999 P.2d at 436.

Plaintiff's counsel explains that he delayed service in this case until he was

satisfied that the ensuing litigation would not unduly damage Plaintiff's mental and

emotional health and to ensure Plaintiff's ability to participate in the pursuance of this

case.  Plaintiff further contends Defendants have not been prejudiced by the delay in

service.  Although, technically, Plaintiff counsel's delay in service could be termed

"wilful delay," under the circumstances of this case and based on a standard of objective

reasonableness, it cannot be equated with "lack of due diligence" or failure to prosecute.

Furthermore, even assuming that it was objectively unreasonable for Plaintiff's counsel to

delay service for such a long period of time, I decline to conclude that such delay, under

the circumstances of this case, warrants granting summary judgment to Defendant Rahn

and the Department.  Defendant Rahn and the Department's request for summary

judgment on statute of limitations grounds will be denied.

## B.  Count II - Wrongful Termination (First Amendment)

Plaintiff alleges that he was wrongfully terminated in violation of his First

Amendment rights.  In support of this claim, Plaintiff contends that his written resistance

to the Department's unlawful reorganization plan and his notification and desire for

rectification of Department and/or employee ineptitude and mismanagement was

constitutional speech on matters of public concern.   Plaintiff further contends that

Defendants failed to balance their interests in an efficient administration against his free speech interests and that Defendants had no evidence that his speech caused any material disruption of their administration.  Plaintiff also alleges that at the time of the alleged conduct the law was clearly established that such conduct was unlawful.

Defendants contend that Plaintiff's speech, as demonstrated by its content, form, and context, did not touch matters of public concern and voiced solely private concerns. Defendants further contend that the content was inappropriate, insulting, shocking, and constituted insubordination.[5]  The form of Plaintiff's memoranda, i.e., the long distribution list for five of the memoranda, "demonstrates [P]laintiff's intention to injure the subjects of his" memoranda, and renders the speech unprotected by the First Amendment.  Defs.' Supp. Mem. at 14.  Defendants finally contend that he context of Plaintiff's memoranda – his fight against being demoted as a result of the reorganization plan – also strips away any entitlement to First Amendment protection.

Government "employees may not be dismissed in retaliation for lawful exercise of [F]irst [A]mendment freedoms."  Ware v. Unified Sch. Dist. No. 492, 902 F.2d 815, 819 (10th Cir. 1990) (internal quotation marks omitted); see Connick v. Meyers, 461 U.S.

_____

[5] In their reply, Defendants include two further arguments as to why Plaintiff's speech is unprotected by the First Amendment because of its content: (1) many of the statements were false and (2) it is far more likely that an emotionally disturbed person's speech concerns purely personal matters and discloses no public wrongdoing.  I will not consider either new argument.  However, I note that both arguments lack merit. The first argument is conclusory and unsubstantiated.  See Moore v. City of Wynnewood, 57 F.3d 924, 933 (10th Cir. 1995) (Defendants must show either that Plaintiff's statements were false (and not true or just matter of opinion) or that Plaintiff made them knowing that they were false or with reckless disregard for their veracity); Wulf v. City of Wichita, 883 F.2d 842, 858-59 (10th Cir. 1989).  The second argument also is unsupported by any evidence.

138, 142 (1983).  The Supreme Court has adopted a multi-tiered test to evaluate a public

employee's claim that his First Amendment rights have been violated by his government

employer.  See Martin v. City of Del City, 179 F.3d 882, 886 (10th Cir. 1999).  A court's

initial query under this test is whether the speech in question can be fairly characterized

as addressing or touching upon a matter of public concern.  See Connick, 461 U.S. at 146.

If this is so, the court then must balance the employee's interest in expression against the

interest of the government in regulating employee speech in order to maintain an efficient

and effective workplace.  See Pickering v. Board of Educ., 391 U.S. 563, 568 (1968).  If

the balancing favors the employee, he must show the constitutionally protected speech

was a substantial or motivating factor for the challenged governmental action.  See Mt.

Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  Finally, if the

employee satisfies the above elements, the burden shifts to the government employer to

show by a preponderance of the evidence that the same action would have taken place in

the absence of the protected conduct.  See id.  Steps one and two concern whether the

expression at issue is subject to the protection of the First Amendment.  Thus, they

present legal questions to be resolved by the court.  In contrast, the third and fourth steps

concern causation and involve questions of fact to be resolved by the jury.  See Melton v.

City of Oklahoma City, 879 F.2d 706, 713 (10th Cir. 1989), modified on other grounds,

928 F.2d 920 (10th Cir. 1991) (en banc).  Only the first two elements – whether the

speech in question was of "public concern" and whether Defendants' interest in

regulating such speech outweighed Plaintiff's interest in engaging in the speech – are

contested by Defendants.  For purposes of their motion, Defendants do not contest that

Plaintiff was terminated because of his speech.[6]

1.      Public Concern

The Supreme Court broadly defines what constitutes speech of public concern.

See Luethje v. Peavine Sch. Dist., 872 F.2d 352, 355 (10th Cir. 1989); see also Roe v.

City and County of San Francisco, 109 F.3d 578, 585-86 (9th Cir. 1997); Dishnow v.

School Dist., 77 F.3d 194, 197 (7th Cir. 1996).  Matters of public concern are those

matters fairly considered to be of interest to the community, whether for social, political,

or other reasons.  See Connick, 461 U.S. at 146; Conaway v. Smith, 853 F.2d 789, 796

(10th Cir. 1988) ("Speech which discloses any evidence of corruption, impropriety, or

other malfeasance on the part of [governmental] officials, in terms of content, clearly

concerns matters of public import.").  "In contrast, matters of only personal interest to

government employees are not protected by the First Amendment."   Lytle v. City of

Haysville, 138 F.3d 857, 863 (10th Cir. 1998); see Gardetto v. Mason, 100 F.3d 803, 812

(10th Cir. 1996).  "Whether an employee's speech addresses a matter of public concern

---

[6] In their reply, Defendants include a section entitled "Plaintiff's termination was not caused by his speech," disregarding their contention in their supporting memorandum that they do not contest that Plaintiff was terminated because of his speech.  Defs.' Reply at 10.  In this new section, Defendants argue that "plaintiff's employment was not necessarily terminated for having engaged in [the speech at issue]. Rather, the employment was terminated because plaintiff was incapable of performing the functions of his job.  Thus[,] the substantial or motivating factor in plaintiff's termination was his [temporary] 'insanity,' not his speech[,] and his First Amendment rights are not implicated."  Id. at 10-11.  I will not consider Defendants' radical change in position. Not only does the submitted evidence not support Defendants' new argument, but Defendants' timing and placement of such an altered contention places Plaintiff in an unfair position.

must be determined by the content, form, and context of a given statement, as revealed by the whole record." Rankin v. McPherson, 483 U.S. 378, 384-855 (1987) (internal quotation marks omitted); see Copp v. Unified Sch. Dist. No. 501, 882 F.2d 1547,1552 (10th Cir. 1989).  In analyzing whether the speech qualifies as a matter of public concern, courts have focused on the motive of the speaker, "i.e., whether the speech was calculated to disclose misconduct or dealt with only personal disputes and grievances with no relevance to the public interests." Conaway, 853 F.2d at 796; see Gardetto, 100 F.3d at 812.  "The inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of concern." Rankin, 483 U.S. at 387; see Gardetto, 100 F.3d at 814.  Speech on public issues "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." Rankin, 483 U.S. at 387 (internal quotation marks omitted).

The parties do not explicitly articulate which incidents of speech are in question. Plaintiff wrote a least six memoranda: on April 18, July 24, August 17, August 21, August 24, and August 28.  Although only the August 17, 21, and 24 memoranda were cited as the justification for Plaintiff's termination by Defendant Rahn and the ALJ in his decision, the parties also cite or quote Plaintiff's April 18 memorandum in support of their respective arguments. Furthermore, Defendants, albeit in a conclusory manner, appear to cite to the August 28 memorandum in support of their position.  The ALJ also stated in his decision that Defendant Rahn testified that he decided to terminate Plaintiff's employment after receiving the August 28 memorandum.  I conclude that the speech at

23

issue is Plaintiff's memoranda of April 18, August 17, August 21, August 24, and August 28.  The July 24 correspondence is not part of the record and has not been explicitly challenged or put in question by either party.  Consequently, it will not be considered.

Applying the above legal standards, some portions of Plaintiff's speech are of public concern and some portions are not.  The portions of Plaintiff's memoranda which concerned the negative effects of the reorganization on Plaintiff, including overlapping job assignments, and the request that Defendants reconsider his demotion and transfer are speech motivated by Plaintiff's interest in maintaining his position, salary rate, and responsibility at the Department.  This speech concerned an "individual personnel dispute," Clinger v. New Mexico Highlands Univ. Bd. of  Regents, __ F.3d __, __, 2000 WL 799796 at *2 (10th Cir. 2000) (internal quotation marks omitted), and was not "based on the same motivation that would move the public to speak out," Gardetto, 100 F.3d at 812.  Such speech is not a matter of public interest and is not constitutionally protected. See Conaway, 853 F.2d at 796.

Plaintiff's complaints that he was being discriminated against because of his disability or handicap (relating to his hip problems), also appear, given the record of this case, to be personally motivated, and, thus, not touching matters of public concern.

Plaintiff's speech concerning the general illegality of the reorganization plan; lack of integrity and qualifications of Department employees; abuse of power and favoritism by Department employees; conduct by Department employees in violation of the Bertain Report; ineptitude of and mismanagement by Department employees; and loss of

24

taxpayer money due to poor decision-making are all expressions touching matters of public concern.  See id. (speech that is not "motivated solely by personal interest or hostility, but was primarily for the purpose of informing [employee's] superiors of what he perceived to be improper and illegal conduct" is of public concern); see also Clinger, __ F.3d at __, 2000 WL 799796 at *2-*3.

Plaintiff's speech concerning Roybal's alleged affair with another employee and the alleged resulting employment decisions is speech of a public nature to the extent that (1) it alleges employment decisions were made as a result of the affair (i.e., for personal and self-serving reasons) and (2) that the relationship was improper under any governmental rule, regulation, or policy – e.g., the other employee was a subordinate. However, that a Department employee committed adultery or destroyed a marriage is not an issue of public concern and Plaintiff's speech on this aspect of the alleged relationship between Roybal and another employee is not constitutionally protected.

Finally, Plaintiff's notification to state counsel that he was planning on filing EEOC charges and his inquiry as to whether he would be represented by state-provided counsel in such actions, while not matters addressing public concern, are nevertheless protected expressions.   Cf. Hicks v. City of Watonga, 942 F.2d 737, 734 (10th Cir. 1991) (free speech rights include the right to petition for redress of grievances and threat to fire employee if grievance was filed was improper) (citing Schalk v. Gallemore, 906 F.2d 491, 498 (10th Cir. 1990)).

2.      Balancing of Interests

The next step of the Pickering/Connick test requires the balancing of Plaintiff's interest in expression against the interest of the Defendants in regulating such speech. See Gardetto, 100 F.3d at 815 ("Under the Pickering balancing test, the employee's First Amendment free speech rights are protected unless the employer shows the some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee." (internal quotation marks omitted)).[7]  When balancing the right of an employee against that of his employer, the employee's First Amendment right is entitled to greater weight when his speech involves clear public concern.  See Conaway, 853 F.2d at 797 (citing Connick, 461 U.S. at 152). "Speech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests." Id.  When evaluating the employer's interest, relevant considerations include "'whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'"  Prager v. LaFaver, 180 F.3d 1185, 1191 (10th Cir. 1999) (quoting Rankin, 483 U.S. at 388).  Notwithstanding these considerations, "an employee's speech will not

---

[7] In political expression cases, the Tenth Circuit appears to reverse the presumption.  See, e.g.,Horstkoetter v. Dep't of Pub. Safety, 159 F.2d 1265, 1272-73 (10th Cir. 1998) (employees "must show that their interest in the expression outweighs the government employer's interest in regulating it"); see also Jantzen v. Hawkins, 188 F.3d 1247, 1257 (10th Cir. 1999).

be left unprotected simply because his 'whistle blowing might jeopardize the harmony of the office or tarnish the integrity of the department.'" Id. (quoting Conaway, 853 F.2d at 798). Furthermore, the employer cannot satisfy its burden with speculative assertions of workplace disruption. See Jantzen v. Hawkins, 188 F.3d 1247, 1257 (10th Cir. 1999); Cragg v. City of Osawatomie, 143 F.3d 1343, 1346-47 (10th Cir. 1998); Melton, 879 F.2d at 716 n.11. Specific evidence of actual disruption is necessary. See Jantzen, 180 F.3d at 1257 & n.8; Prager, 180 F.3d at 1191; see also Ramirez v. Oklahoma Dep't of Mental Health, 41 F.3d 584, 594 (10th Cir. 1994); Wulf, 883 F.2d at 862.

Plaintiff's speech, as identified above, "involved some [alleged] impropriety on the part of" the government or its employees and, thus, is entitled to a greater presumption of First Amendment protection. Conaway, 853 F.2d at 797; see Prager, 180 F.3d at 1191 (employee's constitutional right to expose governmental misconduct entitled to substantial weight). This tilt in favor of Plaintiff concurrently places a heavier burden on Defendants to show that terminating Plaintiff was necessary. See Conaway, 853 F.2d at 797.

The only employer consideration at issue is that of disruption of the operation of the Department. See Defs'. Supp. Mem. at 16-17. Although portions of Plaintiff's memoranda were caustic, vehement, vitriolic, and sometimes clearly colored by Plaintiff's emotional and mental distress, there is little evidence that Plaintiff's speech (as a whole or that part which addressed matters of public concern or attorney representation) resulted in governmental disruption. In his September 5, 1995 letter terminating Plaintiff,

27

Defendant Rahn informed Plaintiff that his memoranda had disrupted the ordinary

operations of the Department and detracted from the goal of maintaining a positive work

environment.  In an affidavit attached as an exhibit to Defendants' supporting

memorandum, Defendant Rahn avers that he perceived that Plaintiff's memoranda were

negatively impacting Departmental operations and Defendant Rahn's goal of improving

morale. These statements are insufficient.  See Wulf, 883 F.2d at 862 ("Although

LaMunyon testified that he felt the letter disrupted the operations of the department,

insufficient evidence supporting or demonstrating such disruption was presented."); Key

v. Rutherford, 645 F.2d 880, 885 (10th Cir. 1981) ("[O]perational efficiency objections to

speech must be real and important before they can serve as a basis for discipline or

discharge of a public employee."); see also Prager, 180 F.3d at 1191.

        Plaintiff's statements and the tone of these statements also provide no basis, in and

of themselves, for concluding that Plaintiff's memoranda caused undue governmental

disruption.  It is unsurprising that Plaintiff's remonstrations regarding the illegality of the

reorganization and poor-decision making skills, discrimination, lack of integrity,

ineptitude, and misconduct or malfeasance on the part of the Department and its

employees caused governmental concern.  The object of whistle blowing is to raise

concern.  Given this objective, whistle blowing is rarely done in a kind and gentle

manner.  See Rankin, 483 U.S. at 387; Gardetto, 100 F.3d at 814.  Furthermore, that

Plaintiff's complaints were colored by his emotional and mental distress was obvious and

a reasonable reader of Plaintiff's memoranda would have taken this distress into

28

consideration.[8]  Consequently, any disruption resulting from the hyperbolic portions of

Plaintiff's speech should have been negligible.   This conclusion is borne out from the

fact that there is no clear evidence that Defendants or Roybal acknowledged or responded

to Plaintiff's correspondences and concerns until Defendant Rahn's August 24, 1995

Notice of Contemplated Disciplinary Action.[9]  If Plaintiff's memoranda before August

24 were causing governmental disruption, it is unclear why the government took no

definite responsive action.  Furthermore, Defendants' nonresponsiveness also may have

effected the manner and extent of Plaintiff's speech.  Defendant Rahn and the

Department, thus, may have contributed to any government disruption by not actively or

clearly responding to Plaintiff's memoranda writing until August 24.

      In sum, Defendants have insufficiently articulated or supported their contention

---

[8] The long distribution list for five of Plaintiff's memoranda does not automatically strip Plaintiff's speech of First Amendment protection. Plaintiff's expression was for the purpose of informing the Defendants, Department employees, and those who interacted with or had authority or influence over the Department of the inability of the Department, Defendant Rahn, and Roybal to discharge their public function and "what he perceived to be improper and illegal conduct." Conaway, 853 F.2d at 796.  I note that Plaintiff's first memoranda, which was ignored, was sent to only two people, Roybal and Defendant Rahn.

[9] It is unclear whether the August 24, 1995 Notice of Contemplated Disciplinary Action was Defendant Rahn and the Department's first acknowledgment and response to Plaintiff's correspondences and complaints.  Defendant Rahn avers that after Plaintiff's August 21 memorandum (1) he understood from Roybal that Plaintiff's immediate supervisor, Fred Cooney, was to advise Plaintiff that the memos were inappropriate and should cease to be written and (2) he sent a memorandum to all Department employees generally affirming their right to air grievances so long as the appropriate processes were used. The first averment does not affirmatively state that Cooney spoke with Plaintiff about the memoranda and is implicitly contradicted by Plaintiff's memoranda, in which Plaintiff states that his concerns were being ignored and in which there is no mention of any such advisement.  The second averment does not support the proposition that Defendants or Roybal advised Plaintiff directly and specifically about his memoranda. The dates of either alleged advisement also not provided.

that the Department experienced disruption and that any such disruption required the

silencing of Plaintiff by terminating him.  I am not persuaded that the Defendants' interest

in terminating Plaintiff outweighed Plaintiff's rights under the First Amendment.

3.      Qualified Immunity

The final issue is whether Defendant Rahn, in his individual capacity, was

protected by qualified immunity when he terminated Plaintiff.  It was clearly established

in 1995 that an employee may not be terminated "in retaliation for lawful exercise of

[F]irst [A]mendment freedoms."  Ware, 902 F.2d at 819 (internal quotation marks

omitted); see Connick, 461 U.S. at 142.  It also was clearly established in 1995 that

speech such as the identified portions of Plaintiff's memoranda touched matters of public

concern or redress of grievance rights and that an employee's strong interest in disclosing

governmental wrongdoing outweighs insignificant or unsubstantiated assertions of

workplace disruption.  See Conaway, 853 F.2d at 797; Wulf, 883 F.2d at 862. Therefore,

Defendant Rahn, in his individual capacity, is not entitled to qualified immunity.

**C.  Count I - Deprivation of Substantive Due Process (Property Interest)**

Substantive due process requires that a protected property interest not be

terminated in an arbitrary or capricious manner, without a rational basis, or in a manner

shocking to the conscious.  See Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 528-

29 (10th Cir. 1998); Brenna v. Southern Colo. State College, 589 F.2d 475, 476 (10th Cir

1978); see also Rochin v. California, 342 U.S. 165, 172 (1952) (substantive Due Process

Clause protects against governmental action that is so opprobrious that it "shocks the

conscience"). Contrary to Defendants' contention, and notwithstanding their reliance on

Roe v. Antle, 964 F. Supp. 1522, 1531 (D.N.M. 1997),[10] a tenured public employee is not

precluded from substantive due process protection of his property interest in his

continued employment. See Tonkovich, 159 F.3d at 528; Brenna, 589 F.2d at 476.[11]

"The Due Process Clause[, however,] is not a guarantee against incorrect or ill-advised

personnel decisions." Curtis v. Oklahoma City Pub. Sch. Bd. of Educ., 147 F.3d 1200,

1215 (10th Cir. 1998) (internal quotation marks omitted).

Defendants' motion focused on their contention that the substantive Due Process

Clause is not implicated in employment actions. Defendants failed to demonstrate a lack

of genuine issues of material fact on the issue of whether they terminated Plaintiff in an

arbitrary or capricious manner, without a rational basis, or in a manner shocking to the

conscious. Consequently, Defendants have failed to meet their initial summary judgment

burden. See Celotex, 477 U.S. at 325. Therefore, with the exception of Defendant Rahn

in his individual capacity, I will deny Defendants' motion for summary judgment as to

---

[10] The court in Roe made no distinction between tenured public employees and nontenured public employees in concluding that there is no substantive due process protection of continued public employment. There also was no discussion of how or when tenure rights apply to public employees who are not teachers or professors. I need not reach the second issue because the parties at bar do not dispute that Plaintiff was a tenured state employee.

[11] Based partially on Roe, and before I became aware of Tonkovich, I failed to take note of a plaintiff's possible tenured status and concluded that the Tenth Circuit had not specifically held that the substantive Due Process Clause protects a public employee's property interest in her employment. See Sandoval v. State of New Mexico Children, Youth, and Family Dep't, No. Civ. 98-702, slip op. at 7-8 (D.N.M. March 10, 1999) (Campos, J.). This may have been error. Any error was harmless, however, because I further concluded that, even assuming such a protected interest, the law on this issue was sufficiently unclear as to require the granting of qualified immunity for conduct committed during 1995-1997. See id. at 8-9.

Count I.

Defendant Rahn, in his individual capacity, is entitled to qualified immunity as to Plaintiff's substantive due process claim because the clarity of the 1958 <u>Brenna</u> holding (that the substantive Due Process Clause protects a tenured public employee's property interest in his employment) was obscured by later caselaw.

The allegedly unconstitutional conduct occurred in 1995.  In 1958, the Tenth Circuit held that a tenured public employee possessed a "property interest deserving of the . . . substantive protections of the Fourteenth Amendment."  <u>Brenna</u>, 589 F.2d at 476. In 1991, the Tenth Circuit cast doubt on this proposition.  <u>See</u> <u>Archuleta v. Colorado Dep't of Insts.</u>, 936 F.2d 483, 489 n.6 (10th Cir. 1991) (citing <u>Regents of  Univ. of Mich. v. Ewing</u>, 474 U.S. 214, 229 (1985) (Powell, J., concurring) (not all property interests entitled to substantive due process protection))[12]; <u>see</u> <u>also</u> <u>Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence</u>, 927 F.2d 1111, 1119 (10th Cir. 1991) (authority in Circuit unclear as to what is required to trigger substantive due process protections).  It was not until 1998 that the Tenth Circuit reaffirmed that it was the law of this Circuit that a tenured public employee possesses a property interest in his continued employment protected by the substantive Due Process Clause.  <u>See</u> <u>Tonkovich</u>, 259 F.2d at 528 (citing <u>Brenna</u>, 589 F.2d at 476).

Thus, even if I were to conclude that Defendants' conduct in terminating

---

[12] The <u>Ewing</u> majority assumed for purposes of the opinion that the alleged property right was protected by substantive due process.  <u>See</u> <u>Ewing</u>, 474 U.S. at 222-23.

Plaintiff's tenured public employment violated Plaintiff's substantive due process rights, I cannot conclude that the law on this issue was established with sufficient clarity in 1995 in light of the fluctuations in Tenth Circuit law between 1958 and 1998. Therefore, Plaintiff's claim against Defendant Rahn, in his individual capacity, based on substantive due process is barred by the doctrine of qualified immunity.

**D.  § 1983 "Persons"**

In two brief sentences on the last page, in the last footnote, of their reply, Defendants contend that Plaintiff cannot pursue constitutional claims against the State, its entities, or official capacity employees because they are not "persons" subject to suit under § 1983, citing <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989). While Defendants' conduct of raising in a reply brief a new, conclusory argument on the merits is certainly not encouraged or condoned, I will exercise my discretion and consider the argument.[13]

"A cause of action under § 1983 requires the deprivation of a civil right by a 'person' acting under color of state law."  <u>McLaughlin v. Board of Trustees of State Colleges of Colorado</u>, __ F.3d. __, __, 2000 WL 825707 at *4 (10th Cir. 2000); <u>see</u> 42 U.S.C. § 1983; <u>Sutton v. Utah State Sch. for the Deaf and Blind</u>, 173 F.3d 1226, 1237

---

[13] Unlike the Eleventh Amendment defense which may be raised at any point because of its jurisdictional attributes, <u>see</u> <u>J.B. ex rel. Hart v. Valdez</u>, 186 F.3d 1280, 1285 (10th Cir.1999), a <u>Will</u> defense is an argument on the merits, <u>see</u> <u>McLaughlin v. Board of Trustees of State Colleges of Colorado</u>, __ F.3d. __, __, 2000 WL 825707 at *2 (10th Cir. 2000) ("By relying on <u>Will</u>, the [Defendants were] contesting the merits of [the Plaintiff's] constitutional claim."), and, thus, should be raised and fully briefed by a party in their motion and supporting memorandum, with an opportunity for response by the opposing party.

(10th Cir. 1999).  States are not "persons" under § 1983.  See Will, 491 U.S. at 71;

McLaughlin, __ F.3d at __, 2000 WL at 825707 at *4.  Governmental entities that are

"arms of the state" for Eleventh Amendment purposes also are not "persons" under

§ 1983.  See McLaughlin, __ F.3d at __, 2000 WL at 825707 at *4; Harris v. Champion,

51 F.3d 901, 905-06 (10th Cir. 1995).  Although the issue was not briefed, I conclude that

there is little, if any, question that the State Personnel Office and the Department are arms

of the State of New Mexico.  They are, thus, not "persons" under § 1983.  Defendants

State of New Mexico, State Personnel Office, and State Highway and Transportation

Department will be dismissed as parties to this action.[14]

    Officials acting in their official capacities generally are not "persons" under

§ 1983.  See Will, 491 U.S. at 71; McLaughlin, __ F.3d at __, 2000 WL at 825707 at

*4.[15]  An exception to this rule, pursuant to the Ex parte Young doctrine, is if the official

has been sued for prospective equitable relief.[16]  See Will, 491 U.S. at 71 n.10;

_____

[14] By removing this cause of action to federal court and litigating the merits (e.g., raising the issue of the applicability of Will), the Defendants may have waived any Eleventh Amendment immunity protecting them from suit.  See McLaughlin, _ F.3d at__, 2000 WL 825707 at *1-*4;  Sutton, 173 F.3d at 1233-36.

[15] A state official in his individual capacity is a "person" under § 1983.  See Sutton, 173 F.3d at 1237.  Consequently, Plaintiff's claim for damages against Defendant Rahn, in his individual capacity, is not precluded except where Defendant Rahn's actions are protected by qualified immunity.

[16] The Supreme Court has recognized two new limitations to the Ex parte Young doctrine.  See Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997); Seminole Tribe of Florida. v. Florida, 517 U.S. 44 (1996). Neither of these restrictions are implicated here.  See Ellis v. University of Kansas Med. Ctr., 163 F.3d 1186, 1197-98 (10th Cir. 1998); Buchwald v. University of New Mexico Sch. of Med., 159 F.3d 487, 495 n.6 (10th Cir. 1998); ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1189-90 (10th Cir. 1998), cert. denied, 525 U.S. 1122 (1999).

<u>McLaughlin</u>, __ F.3d at __ n.2, 2000 WL at 825707 at *4 n.2; <u>MCI Telecomm. Corp. v. Public Serv. Comm'n of Utah</u>, __ F.3d. __, __, 2000 WL 783382 at *9 (10th Cir. 2000); <u>see</u> <u>also</u> <u>Ex parte Young</u>, 209 U.S. 123, 159-60 (1908).  Plaintiff has requested that I order Defendant Rahn, in his official capacity, to restore Plaintiff to a position of comparable pay and responsibility for which he is qualified, with back pay, restoration of seniority, leave, and other equitable relief.  With the exception of back pay, the relief sought by Plaintiff against Defendant Rahn in his official capacity is prospective equitable relief.  Consequently, with the exception of the claim for back pay, Defendant Rahn, in his official capacity, is a "person" under § 1983.  <u>See</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 663-69 (1974) (suits against state officers acting in their official capacity for retroactive payments are not allowed under <u>Young</u>).

## IV.   SUMMARY

In summary, the counts of Plaintiff's Amended Complaint which remain after this Opinion is filed are: (1) Count I against Defendant Rahn in his official capacity and (2) Count II against Defendant Rahn in his individual and official capacities.


**NOW, THEREFORE, IT IS ORDERED** that Defendants' Motion for Summary Judgment, filed January 31, 2000 [Doc. No. 9], is GRANTED IN PART AND DENIED IN PART.  Defendants State of New Mexico, State Personnel Office, and New Mexico Highway and Transportation Department are dismissed as parties to the action.  Future

captions in this case should reflect this change in parties.  Defendant Rahn, in his official capacity, is shielded from suit to the extent that Plaintiff seeks back pay and other non-prospective, non-injunctive relief.  Defendant Rahn, in his individual capacity, is granted qualified immunity as to Count I (Deprivation of Substantive Due Process) of Plaintiff's Complaint.  Defendants' motion is otherwise denied.

_____

SENIOR UNITED STATES DISTRICT JUDGE


Counsel for Plaintiff:  Herbert M. Silverberg, Santa Fe, New Mexico

Counsel for Defendants:  Paula Forney, NEW MEXICO DEPARTMENT OF LABOR, Santa Fe, New Mexico