IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN FINN,

    Plaintiff,

v.                                                    No. CIV 99-982 PK/WWD

STATE OF NEW MEXICO, *et al.*,

    Defendants.

### Defendant's Proposed Findings of Fact and Conclusions of Law

COMES NOW defendant Pete Rahn, by and through his attorneys, and submits the following proposed findings of fact and conclusions of law.

### Findings of Fact

1.    Plaintiff John Finn resides in Santa Fe County, New Mexico.

2.    Defendant Pete K. Rahn is a resident of Santa Fe County and at all times relevant to this lawsuit, acted as the Secretary of the New Mexico State Highway and Transportation Department ("the Department).

3.    John Finn was an employee of the Department; he began working for the Department in 1974.

4.    John Finn was terminated from the Department effective September 8, 1995.

5.    In January 1995, defendant Rahn was appointed Secretary of the Department.

6.    Shortly after his appointment, defendant Rahn and the Department decided to implement a work force reorganization. When Finn learned of the reorganization plan, he became upset at its impact on his job title and a nominal pay cut.

7. On April 18, 1995, Finn sent a one page intra-departmental correspondence ("IDC") to the Department Deputy Secretary, Benny Roybal regarding a meeting between Roybal and Finn on April 14, 1995.

8. The April 18, 1995 IDC solely concerns Finn's personal job situation and, by Finn's admission in his deposition, does not concern any matters of public concern.

9. The April 18, 1995 IDC was insubordinate; it also made several unsupported allegations against Mr. Roybal.

10. Mr. Roybal attempted to meet with Mr. Finn to discuss the April 18 IDC but Finn refused to do so.

11. Finn had hip replacement surgery in April 1995. He did not return to work until June 1995.

12. Beginning on July 24, 1995, Finn sent a series of memorandums to employees of the Department. These memos included: a July 24, 1995 letter to Deputy General Counsel, Richard Ferrari; an August 17, 1995 IDC to Pete Rahn and Benny Roybal; an August 21, 1995 IDC to Highway Department Chief Attorney, Arthur Waskey, and an August 23, 1995 IDC to Benny Roybal. These memorandums contained numerous unsupported, scandalous allegations against various Department employees. The memos contained language indicating that Finn would refuse and was in fact refusing to perform assigned tasks. The memos also contained a number of personal insults directed to Finn's supervisors including Deputy Secretary Roybal and Secretary Rahn.

13. By plaintiff's own admission in his deposition, the bulk of these memos discussed matters having nothing to with issues of public concern.

14. Finn's primary motivation in sending the memos, and the majority of the content

contained in those memos, pertained solely to his dissatisfaction with the impact of the reorganization on his personal job situation.

15. The content of the series of the memorandums is such that Finn's supervisors could have reasonably suspected them to cause disruption and emotional distress among Department employees.

16. The memos did in fact cause disruption among the activities of the Department's employees and caused emotional distress to certain individuals.

17. Finn claims that very limited excerpts from his letters set forth matters of public concern. These matters include Finn's allegations that the reorganization by the Department was not authorized until it was approved by the State Personnel Board, the lack of the integrity and qualifications of certain department employees, abuse of power and favoritism by Department employees, conduct by Department employees and violation of the Bertain Report and loss of tax payer money due to poor decision- making.

18. Finn's allegations, with respect to these alleged matters of public concern, are both unsupported by the evidence and untrue.

19. On August 24, 1995, defendant Rahn provided Finn with a Notice of Contemplated Disciplinary Action, proposing to terminate Finn's employment with the Department because of his August 17, 21 and 24, 1995 memos. Rahn advised Finn that he had a right to take up grievances about Finn's personal job situation but that the substance of Finn's letters were irresponsible and unprofessional. Rahn also informed Finn that he was being insubordinate in refusing to perform duties assigned to him and that Finn's use of the Department resources and work time to pursue claims against the State was contrary to the Governor's Code

of Conduct. The letter from Rahn was attempted to be delivered to Finn on August 28, 1995, but he refused delivery of the letter.

20. Finn was aware that he had been placed on administrative leave as of August 28, 1995 for the reasons set forth in Rahn's letter because he was advised of such facts when a Department employee attempted to hand deliver the letter.

20. In response to being put on administrative leave, Finn did not attempt to correspond with Mr. Rahn or otherwise contact him personally to discuss the situation.

22. Instead, on August 28, 1995, Finn sent an IDC to Benny Roybal, with a copy to defendant Rahn.

23. Finn titled that IDC "The Last Straw." This letter was sent in reaction to Rahn's decision to place Finn on suspension.

24. According to Finn, the August 25, 1995 IDC contains no expressions of any matters of public concern with the exception of the following language: "its been common knowledge (among Departmental employees) that the relationship between you and Trish Rodriguez has gone beyond a work relationship, and that she is your 'Lolita.' " Finn's comments about Trish Rodriguez being Mr. Roybal's "Lolita" were made in the context of the paragraph in which Finn alleged that Roybal had contributed to the breaking up of a marriage.

25. The statement that Finn alleges to involve a matter of public concern does not aver that employment decisions were made as a result of the alleged affair or that the relationship was improper under any governmental rule, regulation or policy.

26. The allegation by Finn of the sexual relationship between Roybal and Rodriguez was in fact untrue as was the allegation that Roybal had caused the divorce between the Rodriguezs.

*Proposed Findings of Fact and Conclusions of Law*  -4-

27. These untrue allegations were disseminated to approximately 30 to 40 other individuals according to the circulation list Finn included at the bottom of the memorandum.

27. On September 7, 1995, defendant Rahn sent Finn, by certified mail, a Notice of Final Disciplinary Action, terminating for just cause Finn's employment with the Department as of September 8, 1995.

28. The September 7, 1995 letter reiterated the reason for termination set forth in Rahn's August 28 letter.

29. In addition, Rahn noted that he had received neither a written response nor a request for an opportunity to respond orally to his proposed contemplated disciplinary action.

30. Following his termination, Finn has not worked outside the home other than assisting in a real estate business operated by his wife and performing household duties. Finn has been able to return to work and has chosen not to do so.

31. On August 28, 1998, Finn filed a complaint against the Highway Department in State Court.

33. Finn deliberately delayed service of the complaint until August 19, 1999, approximately one year after the filing of the original complaint and the expiration of the three year statute of limitations.

34. Defendant Rahn appropriately raised issue of untimeliness and improper service of the complaint.

35. The State Personnel Board previously adjudicated that Finn's memorandums constituted adequate grounds for termination of Finn's employment.

## Conclusions of Law

1. The Court has jurisdiction over the parties and the subject matter.

2. Venue is proper in this district.

4. Given the overall content of Finn's letters, which by his own admission, contain only brief references of matters of public concern, coupled with Finn's motivation in writing the letters to redress his personal job situation, the Court concludes as a matter of law that Finn's letters are not entitled to First Amendment protection.

5. Alternatively, to the extent that the letters do involve some issue that arguably might be of public concern, any interest Finn had in such speech, is far outweighed by the potential and actual disruption of Highway Department operations by Finn's letters when considered as a whole, thereby denying such speech entitlement to First Amendment protection.

5. The allegations which Finn claims constitute matters of public concern are both unsupported and false, further militating against protection under the First Amendment.

6. Defendant Rahn was not motivated as a result of the alleged matters of public concern to terminate Finn; rather it was the tone with which Finn sought to redress matters concerning his personal job situation and other issues of unprotected speech that contributed to Rahn's decision to terminate him. In addition, Rahn was motivated by Finn's insubordinate conduct, the scandalous and outrageous allegations against other Department employees including Mr. Roybal, Finn's improper use of the Department's resources and Finn's refusal to respond to the Notice of Contemplated Disciplinary Action that directly led to Finn's termination.

7. To the extent that any of Finn's comments might be deemed matters of public

concern that might have somehow contributed to Rahn's decision to terminate him, the evidence abundantly shows that Finn would have been terminated anyway even in the absence of such comments.

8. By Finn's own admission, the majority of all of his memorandums do not deal with matters of public concern, and if the Court were to simply remove those alleged issues from the content of Finn's memorandums, there is still more than adequate insubordinate, unprofessional and other disruptive conduct to justify his termination.

9. In addition, the State Personnel Board's adjudication that Finn's memorandums constituted just cause for termination is binding on Finn in this action by application of the doctrine of collateral estoppel.

10. Based on these conclusions, Finn has not proven the necessary elements of Counts I and II of his amended complaint and therefore judgment should be entered in favor of defendant Rahn in his official capacity and individual capacities.

11. In addition, Finn's complaint fails against defendant Rahn due to untimely service under New Mexico law.

12. Finn also failed to mitigate his damages.

Herrera, Long, Pound & Komer, P.A.
*Attorneys for the Defendant Rahn*

Mark E. Komer, Esq. by Cheryl O'Connor
P.O. Box 5098
Santa Fe, NM 87502-5098
(505) 982-8405
(505) 982-8513 fax

*[signature]*
Cheryl O'Connor, Esq.
NM RMD Legal Bureau
P.O. Drawer 26110
Santa Fe, NM 87502-0110
(505) 827-2202
(505) 827-0593 fax

## Certificate of Service

I hereby certify that on this 5th day of July, 2002, a true and correct copy of the foregoing pleading was mailed first class, postage pre-paid, to the following counsel of record:

Herbert M. Silverberg
Silverberg Law Offices
318 Solano Drive, SE
Albuquerque, NM 87108

*[signature]*
Cheryl O'Connor, Esq.