IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN FINN,

    Plaintiff,

v.

No. CIV 99-982 PK/WWD

STATE OF NEW MEXICO, *et al.*,

    Defendants.

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff submits the following proposed findings of fact and conclusions of law:

### Findings Of Fact

1. Plaintiff lives in Santa Fe County, New Mexico.

2. Defendant Rahn lives in Santa Fe County.

3. Plaintiff was at all pertinent times a classified, tenured State employee.

4. In January of 1995 Defendant Rahn was duly appointed as the Secretary of the New Mexico State Highway and Transportation Department ("Department"). He acted in that capacity at all times pertinent to this action.

5. Soon after becoming Secretary, Defendant Rahn decided to reorganize the Department. He made and implemented this decision without ever obtaining the formal approval of the New Mexico State Personnel Office.

6. Plaintiff became concerned that the reorganization might therefore be illegal. He also became concerned that Defendant Rahn's motives for imposing the reorganization



were improper, and that if carried through, the reorganization would impose upon Plaintiff personally an improper and unfair demotion and loss of income.

7. Plaintiff also became concerned that as a result of the reorganization, a number of poorly qualified individuals had been inappropriately installed in positions of upper management, with serious adverse consequences to the public interest.

8. Beginning in mid-April of 1995 Plaintiff contested the appropriateness of the reorganization and other aspects of Department management in a series of five memoranda addressed to various of his supervisors, including Defendant Rahn.

9. No one from the Department responded to these memos in any way before August 24, 1995.

10. In particular, Plaintiff was never individually told in any way that Defendant Rahn considered these memoranda offensive, improper, and/or insubordinate until August 24, 1995.

11. Due to the Department's lack of response, Plaintiff began to indicate at the bottom of the memos that copies were being sent to a wider and wider array of recipients.

12. Other than these distribution lists, there is no evidence that any copy of any memo was ever circulated beyond the Department' upper management.

13. On August 24, 1995, Defendant Rahn caused a Notice of Contemplated Action to be hand-delivered to the Plaintiff. The action contemplated was termination. It was substantially based on Defendant Rahn's unverified assumption that copies of the memos had in fact been delivered to every person indicated on the distribution lists.

14. Additional stated bases for the termination were Rahn's contentions that the tone of the memos, and the manner in which (he assumed without investigating) the

memos had been distributed were irresponsible and unprofessional, and that they sidestepped internal Department processes that Defendant Rahn considered important.

15. An additional stated reason for the termination was that the memos constituted "insubordinate behavior toward supervisors or managers."

16. A further stated reason was Defendant Rahn's contention that because the memos sought to pursue claims against the State, they did not advance the interests of the State or the Department, and that in circulating the memos the Plaintiff was wasting State time and resources.

17. On September 7, 1995, Acting Secretary Ronald E. Gaines sent the Plaintiff a Notice of Final Disciplinary Action that was identical in all material respects to the Notice of Contemplated Disciplinary Action.

18. Plaintiff appealed his dismissal, and an appeal hearing was held before a State Personnel Office Hearing Officer a year later, in September of 1996.

19. At hearing, Defendant Rahn added to his reasons for having dismissed the Plaintiff a year earlier; the additional reason was the inappropriateness of the analogies that Plaintiff had used in the memos.

20. The State Personnel Board upheld the termination. Plaintiff's impaired and fragile mental health made it impossible for him to make a meaningful choice as to whether the Personnel Board decision should be appealed to the New Mexico courts. As a result, he did not appeal the termination, and the Personnel Board's adverse determination became final.

21. In January of 2000 a totally different reason for the termination was substituted by Defendant Rahn: the substantial or motivating factor in plaintiff's termination was his insanity, not his speech.

22. By November of 2001 Defendant Rahn declared that the true reasons for terminating Plaintiff were the tasteless, grossly insubordinate, insulting and extremely unprofessional tone of Plaintiff's memos, and the possibility that the overall quality of intra-departmental communications would deteriorate if it were to become known that such communications were tolerated.

23. There is no evidence that any of the memos was circulated to anyone other than a handful of the most senior Department managers.

24. There is no reliable evidence that Plaintiff's memos caused any actual or meaningful disruption in Department activities.

25. Defendant Rahn relies on selected excerpts from Plaintiff's memos to support his prediction of future disruption.

26. Given the memos' limited circulation to a very knowledgeable audience, the memos would not likely have caused significant Departmental disruption, *inter alia*, because the absurd nature of the allegedly offending portions of the memos ensured that they would not be taken seriously by any reasonable Department employee.

27. Defendant Rahn did not conduct an appropriate investigation in support of his prediction that disruption of agency services would be inevitable unless Plaintiff were immediately terminated.

28. The termination had a massive psychological, spiritual and emotional impact on Plaintiff, who has suffered and will continue to suffer such severe emotional distress that he is entitled to an award of $500,000 for emotional distress.

29. Since his termination Plaintiff's mental and emotional fragility were such that he could not reasonably be expected to hold meaningful employment outside the home.

30. Plaintiff has lost past earnings of nearly $408,000 through 2002. The total present value of his lost earning capacity would be about $650,000, assuming retirement at age 62; $830,000, assuming retirement at age 68; and $1,500,000 if Finn worked until life expectancy (age 78).

31. Plaintiff would have continued working until at least age 68. He has therefore incurred lost income in the amount of $830,000 (the total present value of the wages and benefits he has lost as a result of his unlawful termination).

32. Any delay in serving the summons and complaint on Defendants resulted from the dire nature of Plaintiff's mental illness, and not from a lack of reasonable diligence or any untoward or impermissible motive.

33. There is no evidence that Defendants were materially prejudiced by the delay in service.

34. Plaintiff has reasonably incurred attorney fees in an amount to be determined separately.

### Conclusions of Law

1. The Court has jurisdiction over the parties and the subject matter.

2. Venue is proper in this District.

3. The law of the case as set forth in *Finn v. State of New Mexico*, 249 F.3d 1241 (10th Cir. 2001) is binding upon this Court.

4. As a matter of law, Plaintiff's contested speech sufficiently addressed matters of public concern to meet the first prong of the *Pickering* balancing test. *Finn, supra,* 249 F.3d at 1248.

5. As a matter of law, Defendant Rahn has failed to show sufficient "disruption of *services*" to permit him to prevail on the second prong of the *Pickering* test. *See, Finn, supra,* 249 F.3d at 1249 (emphasis added).

6. The mere fact that the Plaintiff's communications were vitriolic and insulting does not justify termination. By its very nature, whistleblowing is to some extent always disruptive, insulting, vitriolic, insubordinate, and calculated to engage the attention of its recipients by the dramatic way in which it is expressed. Therefore, as a matter of law, the mere fact that speech may be insubordinate is not sufficient to deprive it of constitutional protection.

7. Defendant Rahn's August 1995 prediction of disruption was also insufficient as a matter of law to permit him to prevail on the second prong of the *Pickering* test. It was founded on the erroneous assumption that Plaintiff's memos had received widespread circulation, and that the accusations they made would be accepted by readers as true.

8. Defendant Rahn failed to conduct an appropriate investigation into whether there had been actual disruption as a result of the memos. He also failed to conduct an appropriate investigation into the likelihood of future disruption. The threat of disruption was therefore not assessed with due diligence, and Defendant Rahn's prediction of disrup-

tion was therefore not based on the kind of well-grounded managerial belief that warrants judicial deference to a management prediction of disruption.

9. The ultimate accuracy *vel non* of protected speech does not vitiate an employee's First Amendment rights unless factual allegations are made with knowledge that they are false. There is no evidence before the Court that Plaintiff's factual statements were false.

10. As a matter of law this Court may not "simply remove [statements on matters of public concern] from the content of Finn's memorandums," as urged by Defendant Rahn in Proposed Conclusion of Law #8. The 10th Circuit expressly rejected such an invitation when it rejected Defendants' offer to follow the "tidbit in a bagful" theory articulated by the 7th Circuit in the *Khuans* case. 249 F.3d at 1248.

11. The 10th Circuit recognized that Defendant Rahn made a "decision to terminate plaintiff in retaliation for his protected speech." *Finn, supra,* 249 F.3d at 1250. This conclusion was manifestly accurate.

12. The State Personnel Board's decision that Plaintiff's actions were insubordinate as a matter of state personnel doctrine cannot have any issue-preclusive effect as to whether Plaintiff's speech was on matters of public concern.

13. The State Personnel Board's decision that Plaintiff's statements were insubordinate as a matter of state personnel doctrine cannot have any issue-preclusive effect as to whether he was unconstitutionally terminated in retaliation for having made those statements.

14. The State Personnel Board's decision that Plaintiff's actions were insubordinate as a matter of state personnel doctrine cannot have any issue-preclusive effect as to

whether it is appropriate as a matter of First Amendment analysis to "simply remove" Plaintiff's statements on matters of public concern from the overall content of his speech and then allow his employer to point to the rest of the speech as a theoretically justifiable basis for the termination.

15. The State Personnel Board's decision that Plaintiff's actions were insubordinate as a matter of state personnel doctrine cannot have any issue-preclusive effect as to whether Defendant Rahn has proved to a preponderance that he would in fact have made the decision even in the absence of the protected speech.

16. Plaintiff could not have been expected to mitigate his economic damages by seeking other work, in light of his mental and emotional fragility.

17. There is no basis in law or fact upon which this Court can or should overrule Judge Campos' decision that Plaintiff exercised due diligence in serving this action on Defendants.

18. There is no basis in law or fact upon which this Court can or should find that Defendants were prejudiced by the delay in service.

19. Plaintiff was discharged in retaliation for protected speech within the meaning of the various tests and doctrines identified in the 10th Circuit's 2001 decision.

20. Plaintiff is therefore entitled to recover damages for lost income and emotional distress.

21. Plaintiff is entitled to reinstatement with back pay, restoration of lost benefits, and any other relief that serves to make him whole.

22. Plaintiff is also entitled to recover his costs and reasonable attorney fees in amounts to be determined in subsequent proceedings.

Respectfully,

_____
Herbert M. Silverberg
318 Solano Drive, S.E.
Albuquerque, New Mexico 87108-2650
(505) 265-6565
Attorney for Plaintiff

### Certificate of Service

I certify that on July 8, 2002, I served copies of this pleading on Mark E. Komer, Esq., on Cheryl P. O'Connor, Esq., and Nancy DaCosta, Esq., by either personally handing copies to them at the United States Courthouse, or by causing copies to be mailed to any of them who were not present at the pretrial conference, first-class postage prepaid, to his or her address of record.

_____
Herbert M. Silverberg