IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| JOHN FINN,<br><br>      Plaintiff,<br>vs.<br><br>STATE OF NEW MEXICO, STATE PERSONNEL OFFICE, NEW MEXICO STATE HIGHWAY AND TRANSPORTATION DEPARTMENT, and PETE K. RAHN, Secretary,<br><br>      Defendants. | No. CIV 99-0982 PK/WWD |

### FINDING OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came on for trial to the court on August 5, 2002. Plaintiff appeared in person and was represented by his attorney, Herbert M. Silverberg, Esq. of Albuquerque, New Mexico and the Defendant Pete K. Rahn appeared in person and was represented by his attorneys, Mark E. Komer, Esq. and Cheryl O'Connor, Esq. of Santa Fe, New Mexico. The court, having heard evidence and argument and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

### Findings of Fact

    1.    Plaintiff John Finn resides in Santa Fe County, New Mexico and was an employee of the New Mexico State Highway and Transportation

      Department (the "Department") from 1974 until he was terminated effective September 8, 1995.

2.    Defendant Pete K. Rahn at all relevant times acted as the Secretary of the Department.

3.    Defendant Rahn sought to implement a workforce reorganization which angered and upset Mr. Finn due to its effect on his job classification and his rate of pay. The reorganization would have resulted in a pay cut of $.17 an hour for Mr. Finn.

4.    There was nothing illegal nor violative of State personnel rules to begin a Department reorganization prior to State Personnel Board approval. Mr. Finn's understanding to the contrary was not based on any statutes, rules or facts.

5.    Mr. Finn, without just cause, refused to perform duties properly assigned to him, refused to cooperate with his superiors and was generally insubordinate.

6.    Mr. Finn sent a series of memoranda ("memos") to employees of the Department containing numerous unsupported and scandalous allegations. The memos also contained language confirming the fact that Mr. Finn was refusing to perform assigned tasks. The memos were filled with personal insults directed to Mr. Finn's supervisors including Benny Roybal (Deputy Department Secretary) and Defendant Rahn

(Department Secretary). The memos indicated that they were disseminated to approximately 30 to 40 other individuals including to a variety of public officials including the New Mexico congressional delegation, the Governor of the State of New Mexico, various state legislators and Department employees. The memos were in fact circulated to several individuals beyond the Deparment's senior management.

7. The Tenth Circuit determined that the memos contained speech that was protected by the First Amendment, in the context of affirming the denial of qualified immunity for Defendant Rahn. Finn v. New Mexico, 249 F.3d 1241, 1245 (10th Cir. 2001). On the record before it, the Tenth Circuit held that although many portions of Mr. Finn's memos dealt with purely personal concerns, limited portions dealt with matters of public concern and Defendant Rahn had conceded as much. Id. at 1247-48. The court then observed:

> When a body of speech contains only a "tidbit" of content touching on matters of public concern, the employee's interest in that speech is very limited. Further, the entire body of the speech is considered when evaluating the state's interest. Hence, although not excluded from protection by the first step of the Pickering analysis, a body of speech with only a "tidbit" of content touching on matters of public concern often will not be entitled to protection under the

3

      second step.

Id. at 1249 (citation omitted). The court held that Defendant Rahn failed come forward with evidence on that second step, specifically that Mr. Finn's speech actually disrupted the workplace. Id. At trial, Defendant Rahn came forward with abundant credible evidence that Mr. Finn's speech (and other conduct) actually disrupted the workplace.

8. The testimony at trial established that the sole motivation for Mr. Finn's speech was a matter of personal interest to Mr. Finn, specifically a perceived demotion resulting from the reorganization of the Department, and to the extent that Mr. Finn implied otherwise, the court finds that he is not a credible witness.

9. The concerns that Mr. Finn expressed in his memo related to internal personnel disputes and his own working conditions.

10. Mr. Finn was suffering from a form of mental illness, where he misperceived the behavior of others and misconstrued the meaning of the events that he did perceive.

11. The average person would not be able to recognize Mr. Finn's mental illness as benign and rightfully would be concerned by Mr. Finn's speech and conduct and apprehensive about his or her own safety.

12. Dr. Rappaport, Mr. Finn's expert psychologist, found that the memos referred to above were accusatory and threatening and "no doubt"

frightened a number of people.

13. As a result of Mr. Finn's memos and conduct, the Department hired outside security. Security personnel were placed at exterior doors to the State Highway Department to guard against any assault by Mr. Finn.

14. As a result of Mr. Finn's memos and conduct, the workplace was disrupted, the authority of Mr. Finn's superiors was undermined, and certain close working relationships were disrupted. Mr. Finn's actions, including the authoring and sending of the memos, were not based on fact and were without regard for the negative effects on others and the Department. The allegations contained in the memos were without foundation and were made in reckless disregard of their effects upon others. The memos were defamatory and had the potential to damage the reputations of those mentioned in them.

15. Mr. Finn recognized that his memos were inappropriate before he sent them. He consulted with several friends prior to sending them and was counseled against sending such inflammatory memos. Mr. Finn made a deliberate decision to send the memos regardless of the consequences.

16. On August 24, 1995, Mr. Finn was provided with a "Notice of Contemplated Disciplinary Action," proposing to terminate Mr. Finn's employment with the Department because of his August 17, 21 and 24,

      1995 memos.

17. Mr. Finn was advised that he could have his grievances reviewed and was further advised that he was being insubordinate.

18. Mr. Finn was aware that he was placed on administrative leave as of August 28, 1995, and was fully aware of the appropriate grievance procedures available to him but deliberately chose not to avail himself of those procedures.

19. Mr. Finn's termination was a result of his insubordination and defamatory allegations made without any basis in fact. His termination was not the result of any protected speech that he might have engaged in.

Having made the foregoing findings of fact, the court makes the following conclusions of law.

## Conclusions of Law

1. The court has jurisdiction over the parties and the subject matter. Venue is proper in the District of New Mexico.

2. Mr. Finn's free speech claim is analyzed using the four-step analysis suggested by Pickering v. Board of Education, 391 U.S. 563 (1968) and Connick v. Myers, 461 U.S. 138, 147 (1983). The first step is to determine whether the speech is protected. If so, the second step is to balance the employee's interest in commenting on matters of public

concern against the government employer's interest in promoting efficient government services. If that balance is struck in favor of the employee's interest, the third step requires the employee to demonstrate that his speech was a substantial or motivating factor in the adverse employment action. If the employee so demonstrates, the fourth step considers whether the government employer has proven that it would have taken the same adverse employment action, even in the absence of the protected speech. See Dill v. City of Edmond, 155 F.3d 1193, 1201-1202 (10th Cir. 1998) (stating four-part test). "The first two steps are legal questions which the court resolves to determine whether the speech is constitutionally protected. The second two steps concern causation and involve questions of fact." Id. at 1202 (citation omitted).

3. Fully recognizing the Tenth Circuit's holding in the qualified immunity appeal that limited portions of the memos touch upon matters of public concern,[1] the court has balanced Mr. Finn's interest to comment on any

---

[1] The Tenth Circuit stated:

Plaintiff's speech sought to expose the allegedly illegal nature of the Department's reorganization, the lack of integrity and qualifications of the Department's management, ineptitude of the Department's management, loss of Department funds due to management's poor decision-making, and the impact of Roybal's alleged affair with a

(continued...)

such matters of public concern with the obligation of Defendant Rahn to efficiently run the Department and promote effective working relationships. The court concludes that Mr. Finn's interest is far outweighed by the actual proven disruption of Department operations caused by Mr. Finn's speech. See Connick, 461 U.S. at 154; Rankin v. McPherson, 483 U.S. 378, 388 (1987). Moreover, had Mr. Finn not been terminated, it is likely that further disruption would have occurred. See Moore v. City of Wynnewood, 57 F.3d 924, 934-935

---

[1](...continued)
subordinate on his decision to promote that subordinate. Portions of plaintiff's speech do touch on matters of public concern under the Connick standards.

Finn, 249 F.3d at 1248. Were the court free to revisit this legal issue, the court would respectfully conclude that Mr. Finn's speech, as illuminated by the testimony and circumstances surrounding it, simply did not address matters of public concern. Though a legal issue, it must be informed by facts. See Connick, 461 U.S. at 147-48 ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.") (footnote omitted). The testimony was virtually unanimous that Mr. Finn was motivated solely by personal concerns related to his job situation and his desire to punish those who he felt responsible. See Gardetto v. Mason, 100 F.3d 803, 812 (10th Cir. 1996) ("In deciding how to classify particular speech, courts focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."). Such speech is not of interest to the community, but rather is a matter of exclusive personal concern. Moreover, although "inadvertently false speech on a matter of public concern," Craven v. Univ. of Colo. Hosp. Auth., 260 F.3d 1218, 1229 (10th Cir. 2001), may be protected, "deliberately or recklessly false statements do not receive First Amendment protection," Dill, 155 F.3d at 1202. The trial testimony illustrated the complete lack of basis for Mr. Finn's charges on the above matters.

    (10th Cir. 1995) (government employer's concerns about impact of speech must be reasonable and in good faith, but further actual disruption not required).

4.    Mr. Finn's speech is not entitled to First Amendment protection.

5.    Even it were, Mr. Finn was not terminated as a result of bringing to light any alleged matters of public concern.

6.    Given the insubordination manifested by Mr. Finn, his state of mind, and his complete lack of cooperation, his termination would have occurred regardless of whether he authored and sent any of the memos.

7.    For these reasons, Mr. Finn should take nothing on his first amended complaint, the action should be dismissed on the merits, and costs should be awarded to Defendant Rahn.

DATED this <u>18th</u> day of October, 2002 at Santa Fe, New Mexico.

                                           */s/ Paul Kelly Jr.*
                                           United States Circuit Judge
                                           Sitting by Designation